SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**CASSADY A. ADAMS, COB #48807**
Cassady.Adams@usdoj.gov
**ARIN C. HEINZ, MIB #P80252**
Arin.Heinz@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:22-cr-00307-MO** |
| **v.** | **GOVERNMENT'S TRIAL MEMORANDUM** |
| **JAVIER FRANCISCO VIGIL,** | |
| **Defendant.** | |

On August 17, 2022, defendant Javier Vigil robbed the Wildhorse Resort and Casino on the Confederated Tribes of the Umatilla Reservation. He pointed a gun at the casino teller and demanded money, stealing over $69,000 US currency. After walking out of the casino, he fired his gun in the direction of a tribal police officer. Vigil was then shot and taken into custody on scene. Vigil possessed the firearm for approximately two weeks prior to the casino robbery.

These crimes were disturbing and disruptive to this small community on Indian Country in eastern Oregon.

The evidence at trial will show that Vigil committed these crimes because he wanted to feel powerful (Godlike), wanted money, and wanted attention. Additionally, Vigil had been

heavily using drugs during the time period of these offenses. The evidence will show that, despite his longstanding mental health issues, Vigil understood the nature and quality of his actions, and that he knew his conduct was wrong.

## I.     STATUS OF THE CASE

Vigil is charged by superseding indictment with interference with commerce by robbery, 18 U.S.C. § 1951(a) (Hobbs Act Robbery); using and carrying a firearm during and in relation to a crime of violence (as to the Hobbs Act Robbery charge), 18 U.S.C. § 924(c)(1)(A); felon in possession of a firearm – armed career criminal, 18 U.S.C. §§ 922(g)(1) and 924(e)(1); attempt to commit murder, 18 U.S.C. §§ 1113 and 1152; assault with a dangerous weapon, 18 U.S.C. §§ 113(a)(3) and 1152; and using and carrying a firearm during and in relation to a crime of violence (as to the Assault with a Dangerous Weapon charge), 18 U.S.C. § 924(c)(1)(A). He has been detained pending trial since his arrest on August 17, 2022.

On July 6, 2023, Vigil filed notice of his intent to raise an insanity defense at trial. ECF 28. As described below, Vigil has been evaluated by multiple psychologists and psychiatrists during the course of this case for the purpose of determining his sanity, as well as competency.

On May 21, 2024, Vigil was ordered to be committed to the Bureau of Prisons (BOP) for a competency evaluation, pursuant to 18 U.S.C. § 4241(b). ECF 93. BOP (Dr. Rebecca Johnson, Psy.D., at FDC-Englewood) determined that Vigil was not competent, and on October 2, 2024, this Court issued an order committing Vigil to BOP for competency restoration, pursuant to 18 U.S.C. § 4241(d). ECF 94. Vigil was transported to MCFP-Springfield for his competency restoration. Following a period of competency restoration, on May 23, 2025, BOP (Dr. Katlyn Hanson, Psy.D., at MCFP Springfield) determined that Vigil had been restored to competency.

Following a hearing on October 6, 2025, this Court found Vigil competent to stand trial, and the case was set for trial to start on April 6, 2026. ECF 99.

On February 27, 2026, Vigil filed a waiver of his right to a jury trial, opting instead for a bench trial on all counts in the superseding indictment. ECF 152. The government has consented to a bench trial in this case. *Id.*

## II.     STIPULATIONS

The parties stipulated to several facts in this case, to streamline the presentation of evidence for the Court. ECF 153. This includes the following:

- A stipulation that the offenses in Counts Four, Five and Six (Indian Country-specific crimes) occurred on the Umatilla Reservation, in Indian Country, as defined by federal law;

- A stipulation that Adult Victim 3 is an Indian person, under federal law;

- A stipulation that the robbery of the casino (as alleged in Count One of the superseding indictment) affected interstate commerce; and

- A stipulation that the firearm Vigil possessed in this case had been shipped or transported in interstate commerce.

The parties may also stipulate to the foundation/admissibility on certain exhibits. If there are additional stipulations, the parties will notify the Court. The government has agreed to stipulate to foundation on business record-type exhibits proposed by the defense, to streamline the trial and avoid calling record custodians. The government may have additional objections to defense exhibits after reviewing them, and if so, will notify defense counsel.

//

### III.    STATEMENT OF FACTS

Javier Vigil is a longtime resident of the Pendleton, Oregon area. He has a history of drug addiction and mental health issues, including diagnoses of schizoaffective disorder, bipolar disorder, and opioid use disorder.

At some point during the summer of 2022, Vigil stopped taking his prescribed mental health medications because it interfered with his ability to use illicit fentanyl. Vigil also liked how he felt when he was off his medications. That summer, Vigil's mental state gradually became impaired as he continued to use illicit drugs and not take his medication. Vigil posted music videos on YouTube, starting around July 2022 and up until August 16, 2022.  In some, he claimed to be God and threatened to harm and kill people. Two screenshots of Vigil's music videos are included below for the Court's reference.





**J\*VER IS RA PLEASE WAKE UP I NEED YOU**

145 views  Premiered Aug 16, 2022  GET OFF THE WALL. WALMART YOUR MINE. WILDHORSE YOUR MINE

On or about August 3, 2022, Vigil acquired a firearm.

On August 5, 2022, a friend of Vigil's overdosed on fentanyl and alcohol at Vigil's residence, in Pendleton, and died. Vigil performed CPR and called the police. The responding officer's report noted that Vigil's living room was relatively clean, and Vigil was upset. At trial, the government will introduce evidence and testimony about this incident, as it relates to Vigil's mental state during this time period and his ability to discern right from wrong.

Several days after his friend's fentanyl overdose death, Vigil threatened another friend with a gun in a dispute over $20.

Three days after that, around August 13, 2022, phone records indicate that Vigil stated that he "shot the closet and floor." Two days later, Vigil's phone messages indicate that he was turned away from getting his "dose" (believed to be referring to a methadone dose), due to possessing a gun.

Text messages from both his daughter and girlfriend during this period expressed concern that Vigil was using drugs. Vigil's girlfriend also expressed concern about him not taking his medication, as well as him possessing a gun.

Closer to August 17, 2022, the date of the casino robbery, Vigil made statements about being God and his agitation appeared to increase. However, in other text messages during this two-week period (closer to the time of the overdose), Vigil appeared to respond and communicate in a socially appropriate manner. For example, on August 7, 2022, Vigil's daughter texted him to say that she was sorry about the loss of his friend. Vigil responded, "Thank you [name redacted]. Yeah my Best friend died. I grew up with him. Since 1st grade we've been hanging out. He was a really good brother."

The evidence will show that Vigil consumed methamphetamine, fentanyl, and alcohol during this two-week period (August 3 to 17, 2022), based on a review of medical records and Vigil's interviews/statements.[1] Additionally, at least one of Vigil's music videos included a photograph of a burned pill with the letter "M" on it on a piece of tinfoil, consistent with smoking counterfeit oxycodone pills containing fentanyl. Vigil tested positive for methamphetamine according to Pendleton Treatment Center records on August 12, 2022, and he tested positive for methamphetamine (as well as amphetamine and methadone), again on August 17, 2022, at the hospital following the robbery of the casino.

---

[1] Medical records from the Umatilla County Jail show that Vigil reported last using methamphetamine a week prior to the robbery, which would have been on or about August 11, 2022. When interviewed by Dr. Duncan on September 18, 2023, Vigil reported last using methamphetamine about two weeks before these offenses. In a psychiatric interview with Dr. Michael Arambula on January 5, 2026, Vigil generally denied methamphetamine usage in temporal proximity to the crimes in this case.

On August 17, 2022, Vigil got a ride to the Wildhorse Casino on Umatilla Indian Reservation from the same friend that he threatened with his gun the week prior. Vigil committed the charged armed robbery and shot at a responding police officer. These crimes were captured on security videos from multiple angles. Several photographs of the robbery and shooting are shown below for the Court's reference.











In a post-arrest interview, Vigil made a statement claiming that he was allowed to commit such acts because he is God. He also acknowledged his status as a convicted felon, but indicated that nonetheless, as God, he was allowed to rob the casino and have a gun.

In other post-arrest statements and interviews during the course of this case, which the government intends to admit at trial, Vigil provided additional reasons for why he did this behavior. He has stated that he was suicidal, was taking fentanyl, and was off his medications. He also indicated that people were ignoring him and not paying attention to him (i.e., his messages, social media posts, and music videos about being God). He also has stated that he wanted money to buy a new vehicle, among other things.

Vigil also said that he would not have committed these crimes if his girlfriend would have texted him back on August 17, 2022.

Vigil expressed empathy for the casino teller, saying that he could tell she was scared of him, and he did not want to hurt her.

In various recorded jail calls in the weeks following his arrest, Vigil made statements about his behavior on the date of offense, his beliefs about being God, how "crazy" he thinks he is, and his anticipated mental health defense at trial. Vigil also repeatedly expressed concern about getting money and complained about the medical treatment he received following the shooting. He also had conversations where he did not discuss his beliefs about being God and interacted in socially appropriate manners.

## IV.    ELEMENTS OF THE OFFENSES

### A.    Count One: Hobbs Act Robbery – 18 U.S.C. § 1951

Count One of the superseding indictment charges Vigil with interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a).  For Vigil to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, on or about August 17, 2022, in the District of Oregon, the defendant knowingly obtained property from or in the presence of Adult Victim 1 and/or Adult Victim 2;

Second, the defendant did so by means of robbery;

Third, the defendant believed that the Adult Victim or Victims parted with the property because of the robbery; and

Fourth, the robbery affected interstate commerce.

Model Jury Instructions for the Ninth Circuit, § 9.8 (Rev. Dec. 2023) (modified).

 "Robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against their will, by means of actual or threatened force, or

violence, or fear of injury, immediate or future, to their person or property, or to property in their custody or possession. *Id.*

As noted above, the parties stipulated that Vigil's conduct affected interstate commerce.

**B.     Count Two: Using and Carrying a Firearm during and in relation to a crime of violence (as to the Hobbs Act Robbery charge) – 18 U.S.C. § 924(c)(1)(A)**

Count Two of the Superseding Indictment charges Vigil with using and carrying a Firearm during and in relation to a crime of violence (as to the Hobbs Act Robbery charge), in violation of 18 U.S.C. § 924(c)(1)(A). It also alleges that Vigil brandished the firearm during and in relation to the offense, and that Vigil discharged the firearm during and in relation to the offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), and (iii).

For Vigil to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, on or about August 17, 2022, in the District of Oregon, the defendant committed the crime of Hobbs Act Robbery as charged in count one of the superseding indictment, which is a crime of violence; and

Second, the defendant knowingly used, carried, brandished, and/or discharged a firearm during and in relation to the Robbery.

A defendant "used" a firearm if he actively employed the firearm during and in relation to the Hobbs Act Robbery.

A defendant "carried" a firearm if he knowingly possessed it and held, moved, conveyed or transported it in some manner on his person or in a vehicle.

A defendant "brandished" a firearm if he displayed all or part of the firearm, or otherwise made the presence of the firearm known to another person, in order to intimidate that person,

regardless of whether the firearm was directly visible to that person.

A defendant used, carried, or brandished a firearm "during and in relation to" the crime if the firearm facilitated or played a role in the crime.

A defendant may "discharge" a firearm for purposes of this statute either on purpose or by accident.

*See* Model Jury Instructions for the Ninth Circuit, § 14.22 (Rev. Nov. 2024) (modified) and Comment.

A defendant may be convicted of 18 U.S.C. § 924(c)(1)(A)(iii) (discharge enhancement) if he discharges a firearm during and relation to the robbery, including as he was fleeing the area, as in this case, where Vigil discharged his firearm in the parking lot of the casino when he was making off with the money. *See United States v. Dinkane*, 17 F.3d 1192, 1200 (9th Cir. 1994) ("[T]he escape phase is part of the unarmed bank robbery."); *United States v. Harrington*, 108 F.3d 1460, 1471 (D.C. Cir. 1997) ("According to the common law, a robbery has not been completed as long as the robber in the immediate aftermath of taking the property indicates by his actions that he is not satisfied with the location of the stolen property."); *United States v. Williams*, 344 F.3d 365, 372 (3d Cir. 2003) ("Our case law has consistently treated escape as part and parcel of a bank robbery."); *United States v. Dustin Henderson*, Case No. 3:20-cr-00022-IM, ECF 114 (D. Or. Apr. 28, 2022) (Denying defendant's motion for judgment of acquittal, where

defendant fired his gun in the parking lot as he was fleeing the scene of a robbery, after stealing property from a store).

### C. Count Three: Felon in Possession of a Firearm (Armed Career Criminal) – 18 U.S.C. §§ 922(g)(1) and 924(e)(1)

Count Three of the Superseding Indictment charges Vigil with the crime of possession of felon in possession of a firearm, with an armed career criminal enhancement, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

For Vigil to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about August 3, 2022, and continuing until on or about August 17, 2022, in the District of Oregon, the defendant knowingly possessed a firearm.

Second, the firearm had been shipped or transported from one state to another;

Third, at the time the defendant possessed the firearm, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

Fourth, at the time the defendant possessed the firearm the defendant knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

Model Jury Instructions for the Ninth Circuit, § 14.15 (Rev. June 2025) (modified).

On this count, the parties have stipulated that the gun possessed by Vigil had been shipped or transported in interstate commerce. ECF 153.

If the Court finds the defendant guilty of count three (felon in possession of a firearm), the Court must determine whether his Vigil's prior felonies were committed on occasions different from one another, for the purpose of the armed career criminal enhancement, 18 U.S.C.

§ 924(e). *See* Model Jury Instructions for the Ninth Circuit, § 14.16 (Rev. Sept. 2025) (suggested language consistent with *Wooden*) (modified).

Offenses committed close in time or place, in an uninterrupted course of conduct, will often count as part of one occasion; not so crimes committed a day or more apart or at a significant distance. *Id.* Proximity in time and of location are important; the further away crimes take place and the more time that elapses between offenses, the less likely they are components of the same criminal event. *Id.* And the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion. *Id.*

### D.     Count Four

Count Four of the Superseding Indictment charges Vigil with the crime of attempt to commit murder, in violation of 18 U.S.C. §§ 1113 and 1152.

For Vigil to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant did something that was a substantial step toward killing Adult Victim 3;

Second, when the defendant took that substantial step, the defendant intended to kill Adult Victim 3;

Third, the attempted killing occurred on the Confederated Tribes of the Umatilla Indian Reservation, which is Indian Country; and

Fourth, Adult Victim 3 is an Indian person.

*See* Model Jury Instructions for the Ninth Circuit, § 16.15 (Rev. May 2023) (modified); 18

U.S.C. § 1152.

A "substantial step" is conduct that strongly corroborated the defendant's intent to commit the crime. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances. Mere preparation is not a substantial step toward committing the crime. *Id.*

On this count, the parties stipulated that Adult Victim 3 is an Indian Person and that the crime occurred on the Confederated Tribes of the Umatilla Indian Reservation, which is Indian Country. ECF 153.

### E. Count Five

Count Five of the Superseding Indictment charges Vigil with the crime of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1152.

For Vigil to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant assaulted Adult Victim 3 by intentionally using a display of force that reasonably caused him to fear immediate bodily harm;

Second, the defendant acted with the intent to do bodily harm to Adult Victim 3;

Third, the defendant used a dangerous weapon; and

Fourth, the assault occurred on the Confederated Tribes of the Umatilla Indian Reservation, which is Indian Country; and

Fifth, Adult Victim 3 is an Indian person.

A firearm is a dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury.

*See* Model Jury Instructions for the Ninth Circuit, § 8.5 (modified); 18 U.S.C. § 1152.

On this count, the parties have stipulated that Adult Victim 3 is an Indian Person and that the crime occurred on the Confederated Tribes of the Umatilla Indian Reservation, which is Indian Country. ECF 153.

### F.    Count Six

Count Six of the Superseding Indictment charges Vigil with using and carrying a Firearm during and in relation to a crime of violence (as to the Assault with a Dangerous Weapon charge), in violation of 18 U.S.C. § 924(c)(1)(A). It also alleges that Vigil brandished the firearm during and in relation to the offense, and that Vigil discharged the firearm during and in relation to the offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), and (iii).

For Vigil to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, on or about August 17, 2022, in the District of Oregon, the defendant committed the crime of assault with a dangerous weapon, as charged in count five of the superseding indictment, which is a crime of violence; and

Second, the defendant knowingly used, carried, brandished, and/or discharged a firearm during and in relation to the assault with a dangerous weapon.

A defendant "used" a firearm if he actively employed the firearm during and in relation to the assault with a dangerous weapon.

A defendant "carried" a firearm if he knowingly possessed it and held, moved, conveyed or transported it in some manner on his person or in a vehicle.

A defendant "brandished" a firearm if he displayed all or part of the firearm, or otherwise

made the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm was directly visible to that person.

A defendant used, carried, or brandished a firearm "during and in relation to" the crime if the firearm facilitated or played a role in the crime

A defendant may "discharge" a firearm for purposes of this statute either on purpose or by accident.

*See* Model Jury Instructions for the Ninth Circuit, § 14.22 (Rev. Nov. 2024) (modified) and Comment.

On this count, the parties stipulated that Adult Victim 3 is an Indian Person and that the crime occurred on the Confederated Tribes of the Umatilla Indian Reservation, which is Indian Country. ECF 153.

## V.     ANTICIPATED DEFENSES AND LEGAL ISSUES

### A.     The Insanity Defense.

Under 18 U.S.C. § 17(a), it is an affirmative defense to a federal prosecution that, "at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts."  Mental disease or defect "does not otherwise constitute a defense." *Id.*  Vigil bears the burden of proving insanity by clear and convincing evidence.  18 U.S.C. § 17(b).  *See also United States v. Knott*, 894 F.2d 1119, 1121 (9th Cir. 1990).  To do so, he must establish that he suffered from "a serious mental disease or defect at the time of the crime" that "prevented him from appreciating the nature and quality or wrongfulness of his acts."  *Id.*

The Ninth Circuit Model Jury Instructions for the Insanity Defense are as follows:

The defendant contends he was insane at the time of the crime. Insanity is a defense to the charge. The sanity of the defendant at the time of the crime charged is therefore a question you must decide.

A defendant is insane only if at the time of the crime charged:

First, the defendant had a severe mental disease or defect; and

Second, as a result, the defendant was unable to appreciate the nature and quality or the wrongfulness of his acts.

The defendant has the burden of proving the defense of insanity by clear and convincing evidence. Clear and convincing evidence of insanity means that it is highly probable that the defendant was insane at the time of the crime. Proof by clear and convincing evidence is a lower standard of proof than proof beyond a reasonable doubt.

You may consider evidence of the defendant's mental condition before or after the crime in deciding whether the defendant was insane at the time of the crime. Insanity may be temporary or extended.

Model Jury Instructions for the Ninth Circuit, § 5.6 (Insanity) (Rev. Jan. 2019).

When asserting an insanity defense to a continuing offense (such as Count Three of the Superseding Indictment, which spans the two-week period that defendant possessed the firearm), a defendant must prove that he or she was legally insane for "virtually the entire duration" of his or her offense. *See United States v. Alvarez-Ulloa*, 784 F.3d 558, 568 (9th Cir. 2015) (approving supplemental jury instruction in 8 U.S.C. § 1326(a) prosecution informing jury that insanity defense is negated if defendant ceased being insane for period long enough that he could have reasonably left United States, but knowingly remained).

There is little question that Vigil suffers from mental health issues and has various mental health diagnoses, which have been discussed at length in prior court proceedings and briefs filed by both parties. But the presence of mental disease alone is not enough to render a person insane, under 18 U.S.C. § 17(a). Vigil must establish that his mental disease prevented him from appreciating the nature and quality or wrongfulness of his acts. *Id.*

The evidence at trial will show that Vigil appreciated the nature and quality and wrongfulness of his actions. First, Vigil has recounted his behavior on the date of offense in precise detail on multiple occasions – despite admittedly using large amounts of fentanyl and being off his medications. There is no suggestion in this case that Vigil did not understand that he was possessing a gun, robbing a casino, and shooting at a police officer.

Second, the evidence will establish that notwithstanding any deific beliefs about himself, Vigil understood that it was wrong for him to have guns (as a felon), wrong to rob people, and wrong to shoot at someone. Vigil's conduct before the robbery and his statements afterwards reflect this.

The parties have previously filed extensive briefing on the "wrongfulness" standard to be adopted by the Court. *See, e.g.,* ECF 72, at 3-9, 20-25 (Gov't Mtn to Preclude Insanity Defense). For the sake of brevity, the government will not repeat those same arguments here.

At the motion hearing on this case on January 21, 2026, the Court indicated that it was inclined to adopt the definition of wrongfulness as being contrary to public morality, as determined by reference to society's accepted standards of right and wrong, which was the standard that was adopted by Judge Immergut in *United States v. Irvine*, No. 3:23-CR-40 (D. Or. 2025) at ECF 111. In *Irvine*, Judge Immergut issued the following order explaining the definition of "wrongfulness" to be applied. The conclusion of her ruling on this topic is as follows:

This Court will apply the definition set out by the Seventh Circuit in *Ewing*: "wrongful" means contrary to public morality, determined objectively by reference to society's condemnation of the act as morally wrong. 494 F.3d at 621. As stated in *Ewing* and *Cuebas*, this Court may also consider evidence that Defendant understood his conduct was unlawful.

. . . .

To the extent that the distinction between subjective and objective wrongfulness becomes significant, this Court will adopt the objective definition of wrongful. Therefore, the appropriate question for trial is whether society would determine that Defendant's conduct was justified even if his delusional beliefs were true. Evidence that Defendant knew and understood that his conduct was illegal may also be considered.

*Id.*

The government requests that this Court apply the same standard in this case when determining whether Vigil's conduct satisfies the legal definition of insanity.

## B. Intoxication / Drug Usage

As described in the fact section above, Vigil's longstanding drug usage and his drug usage prior to and contemporaneous with the offenses in this case will be an issue at trial. Vigil is unable to prove that his criminal conduct was caused solely by a mental disease or defect, and not a combination of mental illness and drug usage.

The Ninth Circuit has affirmed that "[t]he effects of the voluntary use of drugs or alcohol do not constitute, nor may they legally give rise to, a severe mental disease or defect. The voluntary use of drugs or alcohol also must be disregarded in determining whether the defendant could appreciate the nature and quality of his acts or the moral wrongfulness of his acts." *United States v. Knott*, 894 F.2d 1119, 1123 (9th Cir. 1990) (Ninth Circuit upholding this requested jury instruction on voluntary intoxication and insanity). Additionally, "if at the time in issue the defendant had a severe mental disease or defect and that the disease or defect gave rise to an

inability to appreciate the nature or quality or moral wrongfulness of his acts, then the defendant's subsequent consumption of drugs or alcohol, whether voluntary or involuntary, cannot preclude his defense of insanity." *Id.*

## VI.     EVIDENTIARY ISSUES

### A.      Other Acts Evidence

On March 2, 2026, the government filed a notice regarding the admissibility of other act evidence in this case, which is incorporated herein by reference. ECF 156. The government intends to admit evidence of Vigil's conduct in the weeks preceding his crimes, his prior felony convictions, drug usage history, and supervision history. This is admissible either as direct evidence, or as rebuttal evidence to the insanity defense, or alternatively, under Fed. R. Evid. 404(b).

### B.      Motions in Limine to Exclude Testimony of Nelson and Lewine

The government intends to file motions to exclude the testimony of proposed defense experts Jeffrey Lewine and Benjamin Nelson, and to request a *Daubert* hearing as to both individuals.

## VII.    CRIMINAL FORFEITURE

The superseding indictment contains two forfeiture allegations seeking to forfeit the firearm, accessories, and ammunition involved in this offense:

- One Arms Corporation of the Philippines semi-automatic pistol, model GI Standard FS, .45 ACP caliber, with serial number: RIA2190663; .
- One black holster;
- One Bulldog magazine holder with two empty magazines.

Forfeiture is mandatory upon conviction for the applicable charges. *See United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011) ("When the government has met the requirements for criminal forfeiture, the district court must impose criminal forfeiture, subject only to statutory and constitutional limits"), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017).[2]

If the Court finds defendant guilty of the violations alleged in Counts One, Two, Three, or Six, the Court will have to determine whether the government proved a sufficient nexus between the items to be forfeited and the offenses in the superseding indictment to justify their forfeiture.

Dated: March 3, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Cassady A. Adams*
CASSADY A. ADAMS
Assistant United States Attorney

*/s/ Arin C. Heinz*
ARIN C. HEINZ
Assistant United States Attorney

---

[2] Vigil will also be prohibited from possessing firearms or ammunition if he is found not guilty by reason of insanity. *See* 18 U.S.C. § 922(g)(4).