Peyton Lee, OSB No. 164224
Assistant Federal Public Defender
Email: peyton_lee@fd.org
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123

Alison M. Clark, OSB No. 080579
Attorney At Law
Email: tex@defenderclark.com
333 SW Taylor St. #300
Portland, OR 97204
Tel: (503) 888-8076

Attorneys for Mr. Vigil

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:22-cr-00307-MO-1 |
| Plaintiff, | DEFENDANT'S MOTION TO CONSOLIDATE *DAUBERT* HEARING WITH TRIAL AND TO ADMIT TESTIMONY OF DR. JEFFREY LEWINE WITHIN PROPOSED SCOPE |
| v. | |
| JAVIER FRANCISCO VIGIL, | |
| Defendant. | |

## I.      INTRODUCTION

Defendant Javier Francisco Vigil, through undersigned counsel, respectfully moves the

Court to consolidate any *Daubert* hearing on the admissibility of Dr. Jeffrey David Lewine's

expert testimony with the bench trial itself, rather than conduct a separate, stand-alone pre-trial

gatekeeping hearing a week before trial on April 1, 2026.[1] In a case tried to the Court, a separate *Daubert* hearing is procedurally unnecessary, strains the parties' and the Court's resources, and the governing case law allows the Court to assess the reliability of expert testimony as it unfolds during trial and disregard it if it falls short of the Rule 702 standard articulated in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 596 (1993).

In addition to the procedural arguments, this motion addresses the scope of Dr. Lewine's testimony. As discussed below and as proposed in prior communications with the government (ECF 178, p. 15), defendant has agreed to specific limitations that directly answer the government's concerns. Dr. Lewine's testimony is neither the caricature of junk science the government's motion portrays, nor an attempt to tell the Court that a brain scan can prove insanity. It is a carefully bounded, scientifically grounded presentation of objective neuroimaging and neurophysiological data that is directly relevant to the elements at issue.

## II.    BACKGROUND

Mr. Vigil has raised an insanity defense under 18 U.S.C. § 17. That statute assigns the defendant the burden of proving by clear and convincing evidence that, at the time of the charged conduct, he was unable to appreciate the nature, quality, or wrongfulness of his acts as a result of a severe mental disease or defect. The threshold questions are therefore factual: (1) whether Mr. Vigil suffered from a severe mental disease or defect, and (2) whether, as a result, he lacked

---

[1] On March 23, 2026 Mr. Vigil's defense team notified the Court that it was no longer planning to call a second witness who had been scheduled for a bench trial, Mr. Ben Nelson [ECF 181]. The reason is that although Mr. Nelson was undoubtedly an expert on explosion hazards caused by mortar and grenade explosions, the nexus of causation is not within the elements of an 18 U.S.C. §17 defense of not guilty by reason of insanity. In order to focus on the core issues before this Court's bench trial of Mr. Vigil, Mr. Nelson was released as a witness.

the capacity to appreciate the wrongfulness of his acts. The government's filings and expert notice indicate an intention to challenge both the severity of Mr. Vigil's condition and whether he is malingering. Dr. Lewine's testimony speaks directly to both.

Dr. Lewine is a Ph.D. neuroscientist with more than thirty years of experience in structural and functional brain imaging and electrophysiology, over 100 peer-reviewed publications, and extensive prior testimony in state and federal courts. To the extent he is aware, he has not been previously excluded as a witness on a *Daubert* challenge.

Dr. Lewine evaluated Mr. Vigil by reviewing magnetic resonance imaging results (MRI), diffusion tensor imaging results (DTI), FDA-cleared quantitative volumetric analysis (NeuroQuant), quantitative electroencephalography (qEEG), and evoked-potential testing. These are objective, instrument-based modalities whose outputs Dr. Lewine compares to age- and sex-matched normative databases. His findings reveal objective abnormalities in Mr. Vigil's brain structure and function consistent with traumatic brain injury and chronic psychiatric disturbance.

Consistent with the proposal communicated to the government at ECF 178, p. 15, defendant agrees to narrow and limit Dr. Lewine's testimony as follows:

• Dr. Lewine will not offer psychiatric DSM diagnoses, prognoses, or treatment recommendations.

• He will not state that Mr. Vigil meets or fails to meet the legal standard for insanity or that he lacked or possessed the requisite mens rea.

• He will describe what the MRI, volumetrics, EEG, and evoked-potential data show, explain how those findings compare to normative data and known TBI/psychiatric patterns, and discuss what cognitive-emotional functions are ordinarily associated with the affected brain regions and networks.

• He will explicitly present his opinions as "from a neuroscientific perspective," consistent with his written report.

PAGE 3.    DEFENDANT'S MOTION TO CONSOLIDATE *DAUBERT* HEARING WITH TRIAL AND TO
                ADMIT TESTIMONY OF DR. JEFFREY LEWINE WITHIN AGREED SCOPE

## III. ARGUMENT

### A. A Separate Pre-Trial *Daubert* Hearing Is Unnecessary in a Bench Trial and Should Be Consolidated with the Trial Itself.

The central purpose of a *Daubert* hearing is to protect lay jurors from being swayed by scientifically unreliable expert testimony, and to make a gatekeeping assessment before the jury is exposed to a full evidentiary record of the opinion. That rationale is largely absent when the Court sits as the finder of fact. Multiple circuits have recognized that in bench trials, the court may defer reliability determinations to trial and simply assess the evidence in context.

The District of Hawaii recently stated the principle plainly: "*Daubert* hearings are meant to protect juries from being swayed by dubious scientific testimony, but when the District Court sits as the finder of fact there is less need for gatekeeping[.]" *Kirsch v. United States,* No. 20-00265 HG-RT, 2023 U.S. Dist. LEXIS 194887, at *4–5 (D. Haw. Oct. 31, 2023) (quoting *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018)). In bench trials, "the District Court is able to make its reliability determination during, rather than in advance of, trial." *Id.*

The Sixth Circuit is in accord: *Daubert* "barriers are even more relaxed in a bench trial situation" because "[t]he 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial." *Deal v. Hamilton Cty. Bd. of Educ.,* 392 F.3d 840, 852 (6th Cir. 2004). The Seventh Circuit has also held that "where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *In re Salem,* 465 F.3d 767, 777 (7th Cir. 2006). That is exactly what defendant proposes: let Dr. Lewine testify in the regular course of trial, with the Court fully empowered to discount or disregard any portion of his testimony it finds unreliable.

Permitting trial-integrated review avoids duplication without sacrificing any of the Court's gatekeeping authority. The Court retains full power under Rule 702 throughout the proceeding. Indeed, consolidating the reliability inquiry with the trial is consistent with how bench trials routinely work in this circuit and others.

**B.** **A Separate Pre-Trial *Daubert* Hearing Would Be Inefficient, Duplicative, and Unnecessarily Expensive.**

Apart from the legal framework, there are compelling practical reasons to consolidate any *Daubert* inquiry with the trial.

First, a stand-alone hearing would require Dr. Lewine to testify twice - once at the pretrial hearing and again at trial. Requiring an expert of Dr. Lewine's caliber and experience to appear on two separate occasions imposes substantial and avoidable expense on the defense. The time commitment and financial burden of duplicative appearances is a legitimate consideration that weighs against a separate hearing.

Second, dual proceedings would divide the evidentiary record unnecessarily. If Dr. Lewine's testimony is being presented in whole or in part, the Court should not have to listen through it twice. The testimony would be delivered in the most meaningful and efficient way if it can be heard alongside the other evidence in the case such as the clinical evaluations, the case history, and the lay witness accounts of Mr. Vigil's behavior. Splitting Dr. Lewine's testimony across two proceedings, on two different days and in two different procedural postures, would fragment the record and diminish the coherence of the defense presentation.

Third, the government will have a full opportunity to cross-examine Dr. Lewine at trial. Any concern about his methodology or the limits of his opinions can be tested through vigorous cross-examination in real time, which is, as the Supreme Court has recognized, the primary

safeguard against unreliable expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

If, despite the foregoing, the government has a preference to hear from Dr. Lewine before its opening statement or at an earlier point in the trial, defendant is willing to discuss taking Dr. Lewine out of order and presenting his testimony first. That solution, while not defendant's preference, would address any pre-opening concern without requiring a separate proceeding. But the Court need not resort to that accommodation; the existing case law confirms that the Court can make its Rule 702 reliability determination in the ordinary course when Dr. Lewine is called.

### C. The Government's Characterization of Dr. Lewine's Anticipated Testimony Is a Straw Man.

The government's motion rests on a caricature of what Dr. Lewine will actually say. The government appears to fear that Dr. Lewine will point to a brain image and tell the Court that it proves insanity or that neuroscience alone can rule out criminal responsibility under 18 U.S.C. § 17. Neither is true, and neither is what defendant proposes.

As the defense's prior responsive pleading makes clear, Dr. Lewine's testimony is not a "could not form intent" argument of the kind considered and rejected in the *Erickson* matter. Dr. Lewine will not offer legal conclusions. He will not tell the Court that Mr. Vigil was insane, that he could not form mens rea, or that he meets any specific legal standard. The government builds its *Daubert* argument by constructing an irresponsible version of testimony that will not be offered and then knocking it down like a straw man. That is not a genuine reliability challenge under *Daubert*.

The agreed limitations set out in Section II above directly address the legitimate scope concerns the government has raised. Dr. Lewine's testimony is tailored to four specific

categories: describing the imaging findings, comparing them to normative data, identifying the cognitive-emotional functions ordinarily associated with the affected brain structures, and presenting all of this from a neuroscientific rather than clinical or legal perspective. These are specialized observations that Rule 702 permits.

**D.     Dr. Lewine's Testimony Is Directly Relevant to the Elements of 18 U.S.C. § 17 That Are at Issue.**

Relevance under Federal Rule of Evidence 401 requires only that the evidence have any tendency to make a fact of consequence more or less probable. Dr. Lewine's testimony clears that threshold with ease. His findings bear on at least three distinct factual issues the government has placed in dispute:

**Severity:** The insanity statute requires that the defendant suffer from a "severe" mental disease or defect. 18 U.S.C. § 17(a). The government has contested the severity of Mr. Vigil's mental disease or defect. Objective neuroimaging and evidence of structural and functional brain abnormalities are probative of severity. The testimony provides quantifiable, instrument-based corroboration of the clinical assessments, anchoring the otherwise contested characterization of Mr. Vigil's condition in measurable data.

**Malingering:** The government has raised the question of malingering and will focus on a jail call in which Mr. Vigil says "how 'crazy' he thinks he is" and discusses "his anticipated mental health defense at trial" [ECF 168, p. 10]. Neuroimaging and electrophysiological data obtained from objective, instrument-based measurements cannot be faked. The results of an MRI, NeuroQuant volumetric analysis, or evoked-potential study reflect brain structure and function as recorded by the equipment, not as reported by the patient. Dr. Lewine's findings bear on relevant, objective information concerning the comparative function of the brain itself.

**Defect of Brain Functioning:** The insanity defense elements in 18 U.S.C. §17 include whether there is a "defect" of the brain in the sense that Mr. Vigil verifiably has a mental disease or defect. Dr. Lewine's testimony describing which brain regions and networks are abnormal and what cognitive-emotional functions those regions ordinarily serve may provide an additional factual foundation for the Court to evaluate whether, as a matter of neuroscience, "defect" is a concept applicable to Mr. Vigil's brain, in addition to or including mental disease. That is a proper and worthwhile contribution to the defense case.

Each of these three areas of relevance corresponds to a factual issue the government has put in dispute. Excluding or further restricting Dr. Lewine's testimony on those issues in a separate hearing removed from the course of a bench trial would deprive Mr. Vigil of his right to present a complete affirmative defense. That is a right the Ninth Circuit has recognized as implicating constitutional rights. *United States v. Sandoval-Mendoza*, 472 F.3d 645, 656 (9th Cir. 2006) (reversing conviction where district court excluded expert brain-function testimony critical to the defense).

## IV. CONCLUSION

Therefore, Mr. Vigil respectfully requests that the Court: (1) consolidate the remaining expert reliability inquiry with the bench trial itself and decline to conduct a separate pre-trial *Daubert* hearing; (2) permit Dr. Lewine to testify in the regular course of trial within the scope as set forth herein; and (3) reserve its Rule 702 reliability determination to be made during and after trial, with full authority to disregard testimony that does not satisfy the standard.

Dated: March 24, 2026.

| | |
|---|---|
| *s/ Peyton Lee* | *s/ Alison M. Clark* |
| Peyton Lee, OSB #164224 | Alison M. Clark, OSB #080579 |